Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2148 | **DATE** | 8/9/2004 |
| **CASE TITLE** | Burney vs. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For reasons stated in the attached Memorandum Opinion and Order, plaintiff's motion for summary judgment [17-1] is granted, the Commissioner's motion for summary judgment [20-1] is denied, judgment is entered for plaintiff and this case is remanded to the Commissioner for further proceedings consistent with this Opinion. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | AUG 10 2004 date docketed | 26 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | | |
| | Copy to judge/magistrate judge. | CLERK | 8/9/2004 date mailed notice | |
| KF | courtroom deputy's initials | 2004 AUG -9 PM 2:09 | KF mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IRENE BURNEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 03 C 2148 ) ) Mag. Judge Michael T. Mason |
| JO ANNE BARNHART, Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Plaintiff, Irene Burney ("Burney" or "plaintiff"), has brought a motion for summary judgment seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant"), who denied Burney's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act, 42 U.S.C. §§ 1381a (2000). Defendant Barnhart filed a cross-motion for summary judgment asking that we uphold the decision of the Administrative Law Judge ("ALJ"). We have jurisdiction to hear this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the following reasons, we grant plaintiff's motion and deny defendant's motion, remanding this case to the ALJ for further proceedings consistent with this opinion.



## *PROCEDURAL HISTORY*

Burney filed an application for DIB and SSI benefits on May 5, 2000, alleging a disability onset date of January 1, 1999.[1] (R. 368-70). Her application was denied initially and after a timely request for reconsideration. (R. 359-66). Thereafter, Burney requested, and was granted, a hearing before an ALJ. (R. 367). On November 7, 2001, Burney testified at a hearing conducted by ALJ John L. Mondi. (R. 79-110). ALJ Mondi issued a written decision on June 14, 2002 denying Burney DIB and SSI benefits. (R. 19-24). The Appeals Council denied plaintiff's request for review and ALJ Mondi's decision became the final decision of the Commissioner.[2] *See Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001); Reg. §416.1481.

## *FACTUAL BACKGROUND*

### *Plaintiff's Testimony*

At the time of the hearing, Burney was forty-five years old. (R. 82). She stood 5'11 and weighed 230 pounds. (R. 88). Burney has a high school education and

---

[1] Plaintiff also filed a previous application for benefits alleging a disability onset date in 1992. Based on that application, plaintiff was found disabled on November 19, 1997 and awarded benefits retroactive to 1992. Sometime thereafter, her benefits were terminated because the Commissioner found that she was engaged in substantial gainful employment from 1994-1998. (R. 373-77). Documents regarding the termination of her benefits are not part of the administrative record before us. However, based on Burney's subsequent May 5, 2000 application for DIB benefits, it appears that she received more DIB benefits than she was entitled to pursuant to the Commissioner's 1997 disability determination. Specifically, in her May 5, 2000 application, plaintiff stated that she was "willing to have $200 deducted from [any possible] social security benefit [to apply] toward repayment of the overpayment." (R. 369).

[2] 42 U.S.C. §405(g) requires the Commissioner, as part of her answer to plaintiff's federal complaint, to provide the Court with a transcript of the applicable administrative record, including the evidence upon which the ALJ based the findings and decisions plaintiff takes issue with in her complaint. In accordance with §405(g), the Commissioner provided us with a 538-page administrative record. A majority of the voluminous record is irrelevant to the issues presently before this Court.

previous work experience as an assistant manager of a convenience store and a receptionist. (82-85). Burney was an assistant manager at a 7-11 store from 1986-1992. According to Burney, her employment at 7-11 ended because the store closed and she "fell on [her] head." (R. 94). The administrative record does not contain conclusive evidence regarding her employment from 1992-1996. However, from 1997-1998, Burney worked as a receptionist for Sullivan Personnel Services and Centurion Services. (R. 377). From 1999-2000, after the alleged onset date of her disability, Burney worked part-time for Centurion Services. *Id.*

Burney testified that she suffers from migraines that cause blurred vision and slurred speech. (R. 86). She stated that at the time of the hearing she had been having "more and more migraine attacks . . . every couple of weeks, . . . for like three or four days" at a time. (R. 96-97). Additionally, she reported having dizzy spells, hip problems, and back problems. (R. 86). She has trouble walking and occasionally uses a cane in the summer time.[3] (R. 101). She uses the cane at home and when she goes to the park to help her with balance. *Id.* She can walk up to six blocks to the grocery store, but after three blocks her "leg gives completely out." (R. 89). She stated that she has great difficulty walking to the grocery store and has fallen while walking there in the past. *Id.*

Save infrequent house guests, Burney has lived alone in an apartment on the third floor of a building without an elevator for the past 23 years. (R. 91, 103). She testified that there are lots of days when she does not leave her apartment. (R. 103).

---

[3] ALJ Mondi noted that Burney was not using her cane at the hearing. (R. 20).

3

When she is in her apartment, she cleans it and prepares three meals per day. *Id.* For entertainment, Burney may read a couple of paragraphs in a book and watch television. *Id.* Burney does not use alcohol or drugs. (R. 93). She has very few friends and has problems with daily social interactions. (R. 107).

## Medical Evidence

As stated *supra*, the administrative record before us is voluminous, but a majority of its contents are irrelevant to our discussion. For purposes of this opinion, we are only concerned with evidence in the record applicable to plaintiff's May 5, 2000 application for disability benefits. Such records include, *inter alia*, the medical records of plaintiff's treating physician, Dr. Robert B. Wright; a consultative examination conducted by Dr. Shital Shah; a physical RFC assessment from 2000; and a 2002 psychological evaluation from Dr. Mark B. Langgut.

### A. Dr. Robert Wright

Dr. Wright began treating plaintiff in February, 1993 and continued to see her several times a year through 2001. (R. 247-53; 308-311; 457-94; 515-517). Since the alleged onset of her disability, Burney visited Dr. Wright for symptoms including: migraine headaches, blurred vision, dizzy spells, hypertension, a semi-functioning left leg and general body numbness. (R.457-465). Dr. Wright observed that Burney suffered from chronic headaches, ranging from manageable to debilitating. (R. 308; 458). The duration of her headaches ranged from a few times a month to a period, lasting up to two weeks, when her headaches occurred at least once a day. (R. 457). He prescribed Tylenol and Mylanta for general pain, Midrin for migraine headaches, and Indiral for complications caused by hypertension. *Id.*

4

Additionally, Dr. Wright observed Burney's social behavior. (R. 460). He noted that she repeatedly failed to make eye contact with him during their appointments. Burney told Dr. Wright that she often had trouble "finding words." (R. 478). Dr. Wright also documented Burney's rambling speech, which did not follow any logical pattern (R. 460), and her frequent circuitous speech patterns. (R. 460).

## B. Dr. Mark Langgut

Dr. Langgut, a clinical psychologist, conducted two consultative psychological evaluations of Burney in 1996 and 2002. (R. 312-317; 518-523). At each exam, Dr. Langgut performed detailed psychological evaluations, including memory tests, abstract reasoning tests and an IQ test. *Id.* He also made general observations about her social behavior. *Id.* In the most recent examination, he opined that Burney has areas of intact intellectual ability and may be able "to learn new tasks, synthesize novel information into existing cognitive schema, and use insight and judgment to good advantage." (R. 512-22). When testing her judgment and insight, Dr. Langgut determined that "she has intact judgment and she is well able to make appropriate decisions and understand the effect of her actions on herself and others." (R. 521).

Dr. Langgut further observed that "her thought processes were characterized by rapid speech, poor coherence, and moderately increasing suggestibility." *Id.* Burney "shifted topics in an overly flexible manner" and had "moderately obsessive ideas and a mild degree of ruminative ideation."[4] *Id.* Additionally, he opined that "her consciousness was clear to somewhat confused, as well as overly abstract." *Id.*

---

[4] Ruminative ideation is the constant dwelling on certain topics or ideas. DORLAND'S MEDICAL DICTIONARY 1476 (27th ed. 1988).

5

Dr. Langgut also evaluated Burney's ability to handle responsibility. (R. 22). He found "although she may need some assistance as a function of her episodic mood variability," she is capable of managing her finances. *Id.* He also found that she "demonstrated adequate judgment, responsibility, and arithmetic reasoning skills, as well as an ability to understand the effects of her actions on herself and others." *Id.* Finally, Dr. Langgut diagnosed Burney with Bipolar Disorder, II[5] and R/O Schizoid[6] personality features. (R. 522).

### C. Other Medical Evidence

In addition to Dr. Wright's treatment notes and the results of Dr. Langgut's examination, the record also contains the results of a physical consultative examination and a physical RFC assessment. Based on a July 13, 2000 consultative examination, Dr. Shah opined that plaintiff's "orientation, memory, appearance, behavior and ability to relate during the exam was entirely within normal limits." (R. 454). Physically, Dr. Shah found that plaintiff had a "full range of motion" in all joints. *Id.* The doctor further noted that plaintiff's gait was normal, and she was able to bear her own weight and ambulate without the aid of any device. *Id.* As for plaintiff's complaints of seizures, Dr. Shah found that, clinically, there were no neurological findings. *Id.*

In November, 2000, at the behest of the SSA, Dr. Robert Patsy affirmed the findings of an August 7, 2000 physical RFC assessment. Dr. Patsy concurred with the

---

[5] Bipolar II is a mood disorder characterized by both manic and depressive episodes. DORLAND'S MEDICAL DICTIONARY 209 (27th ed. 1988).

[6] A schizoid personality is characterized by traits of shyness, sensitivity, social withdrawal, and introversion. *Id.* at 1492.

6

original DDS physician that plaintiff could perform medium level exertional work. Specifically, he found that she could lift up to 50 pounds occasionally, and 25 pounds frequently. (R. 496). She could stand and/or walk for a total of about 6 hours in an 8-hour work day, and could sit for a total of about 6 hours in an 8-hour work day. *Id.* Burney's ability to push and/or pull was unlimited. *Id.* Dr. Patsy also found that plaintiff did not have any postural, manipulative, visual, or communicative limitations, but she should avoid concentrated exposure to hazards because of her alleged seizures. (R. 497-99).

## *STANDARD OF REVIEW*

We must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. §405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is more than a scintilla of evidence and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995)(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). We must consider the entire administrative record, but we will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)(quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). We will conduct a "critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Id.* (quoting *Steele*, 290 F. 3d at 940.). The ALJ "must build an accurate and logical bridge from evidence to [his] conclusion," however he need not discuss every piece of evidence in the record. *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). When the decision of the ALJ

7

is "unreliable because of serious mistakes or omissions, the reviewing court must reverse unless satisfied that no reasonable trier of fact could have come to a different conclusion, in which event a remand would be pointless." *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

## *LEGAL ANALYSIS*

A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that twelve months." 42 U.S.C. §423(d)(1)(A). In determining whether the claimant is disabled, the ALJ must consider the following five step inquiry set forth in 20 C.F.R. §416.1920(a)-(f): "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon*, 270 F.3d at 1176. If at any step in the inquiry the ALJ determines that the claimant is not disabled, the analysis ends. *Goodson v. Barnhart*, 217 F.Supp.2d 892, 900 (N.D.Ill. 2002). The claimant has the burden of establishing a disability at steps 1 through 4. *Zurawski*, 245 F.3d at 886. However, if the claimant reaches step 5, "the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy." *Id.*

Steps 1 through 3 of the ALJ's analysis are not contested by the parties. At step 1, ALJ Mondi finds that plaintiff is not currently engaged in gainful employment,

8

"although her earnings from work approach the level deemed indicative of substantial gainful employment." (R. 23). At step 2, the ALJ makes two conflicting findings. Initially, in the section of his decision entitled "Evaluation of the Evidence", he finds that Burney has a "mental impairment that is severe within the meaning of the Regulations." He then proceeds to a step 3 determination that the mental impairment does not "meet or medically equal any impairment" in the Listings. (R. 21). Within that section of his decision, ALJ Mondi does not address any possible physical impairments. However, two pages later, in the section entitled "Findings", he opines that Burney has "physical *and* mental impairments that are 'severe'," but do not meet or medically equal any impairment in the Listings. (R. 23) (emphasis added). This inconsistency will be addressed *infra*.

At step 4, the ALJ finds that despite her impairments, the exact nature of which is unclear, Burney can perform unskilled, medium exertional level work "subject to limitations that are 'slight' in understanding, remembering and carrying out short, simple, as well as detailed instructions; and 'moderate' in the ability to make judgments on simple work-related decisions and to respond appropriately with the public, supervisors, and co-workers." (R. 23). Accordingly, the ALJ concludes that with an RFC to perform unskilled, medium exertional level work with some slight and moderate limitations, Burney can perform her past relevant work as a receptionist and thus is not disabled under the Act. Because the ALJ found that Burney can perform her past relevant work, he never reached step 5 of the analysis.

Burney raises a number of issues on appeal. Specifically, she argues that (1) the ALJ erred as a matter of law by substituting his medical opinion for that of Dr.

Langgut; (2) he failed to consider a relevant line of evidence, namely the medical records from Dr. Wright; (3) he erred in finding Burney's complaints of pain not credible; and (4) her case should be remanded back to the ALJ to allow him to consider new evidence. Further, our independent review of the ALJ's opinion raises an additional basis for appeal, namely the ambiguity of the ALJ's step 2 findings.

## Step 2 Ambiguity

We begin by addressing the ambiguity in the ALJ's articulation of his step two findings. As we stated *supra*, the ALJ's decision contains two internally inconsistent step 2 findings. In the "Evaluation of the Evidence" section, ALJ Mondi found that Burney has a "mental impairment that is severe within the meaning of the Regulations," but makes no mention of the presence or absence of any physical impairments, or the level of their severity. (R. 21). Two pages later, in the "Findings" section of his decision, the ALJ states that Burney has both "physical *and* mental impairments that are 'severe'" under the Act. (R. 23) (emphasis added). From the ALJ's decision, we cannot determine his precise step 2 finding. We do not know whether the ALJ determined that plaintiff has both mental and physical impairments, which he considered severe, or, if he only considered plaintiff's mental impairments severe under the Act. Further, if the ALJ did find that plaintiff had severe physical impairments, we cannot decipher their identity based on his decision. The ambiguity of the ALJ's step two findings necessitate a remand for a more meaningful articulation of which, if any, of plaintiff's impairments the ALJ found to be severe under the Act. *See Marco v. Apfel*, 97 C 6824, 1999 WL 311695, *5 (N.D.Ill. May 13, 1999) (remanding a case to the ALJ because his step 3 findings were inconsistent).

10

### Dr. Wright's Treatment Notes

Related to the ALJ's failure to sufficiently articulate his step 2 findings is plaintiff's argument that the ALJ ignored a pertinent line of evidence, namely medical records from plaintiff's treating physician, Dr. Wright. In her application for benefits, plaintiff alleged the physical impairment of migraine headaches, which is supported by Dr. Wright's treatment notes. As stated above, it is unclear whether the ALJ considered plaintiff's migraines a severe impairment. What is clear, is that the ALJ failed to adequately address plaintiff's claims regarding her migraine headaches within his decision. In his cursory opinion, which barely reaches the sixth page, the ALJ does not include a single reference to the content of Dr. Wright's treatment notes or findings.

The ALJ has the duty to "weigh the evidence, resolve material conflicts, make independent findings of fact and determine the case accordingly." *Brown v. Barnhart*, 298 F.Supp.2d 773, 778 (7th Cir. 2004). In Social Security cases, "treating source opinions must be given special consideration." *Id.* at 788 (citing *Dominguese v. Massanari*, 172 F.Supp.2d 1087, 1100 (E.D. Wis. 2001). Additionally, if "well supported evidence by medically acceptable clinical and laboratory diagnostic techniques and 'not inconsistent' with other substantial evidence, the adjudicator must afford such opinions controlling weight." *Id.*, (citing SSR 96-8p); 20 C.F.R. § 404.1527(d)(2). If the ALJ chooses not to afford the treating physician's opinion controlling weight, she may not simply reject it. *Id.* Instead, she is required to "evaluate the opinion's weight by looking at the length, nature and extent of the plaintiff's and physician's treatment relationship; the degree to which the opinion is supported by the evidence; the opinion's consistency with the record as a whole; whether the doctor is a specialist and 'other factors.'" *Id.*

11

(quoting 20 C.F.R. § 404.1527(d)). The ALJ is required to "give good reasons" for the weight afforded to a treating physician, regardless of her final decision. *Id.* (quoting *Wates v. Barnhart*, 274 F.Supp.2d 1024, 1034 (E.D. Wis. 2003); 20 C.F.R. § 404.1527(d)(2).

ALJ Mondi's decision does not sufficiently address plaintiff's complaints of debilitating migraine headaches, or Dr. Wright's treatment notes regarding plaintiff's ailments. Accordingly, plaintiff's claim is remanded to the ALJ for further elaboration on plaintiff's alleged physical impairments and the effect, if any, of Dr. Wright's treatment notes on the ALJ's conclusions regarding the extent of plaintiff's limitations and disabilities.

***Credibility***

The ALJ similarly failed to sufficiently articulate the basis for his finding that plaintiff's allegations regarding her limitations and disabilities are not credible. Generally, the court must defer to the ALJ's credibility determination because the ALJ, not the reviewing court, personally observed the plaintiff at the hearing. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, an ALJ's credibility findings cannot be affirmed unless he provides "specific reasons for [his] finding on credibility, supported by the evidence in the case record." The ALJ's reasons must be "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *S.S.R. 96-7p* (1996). "It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Zurawski*, 245 F.3d at 887 (quoting *S.S.R. 96-7p* (1996)).

12

ALJ Mondi does not provide specific reasons for his credibility determination. He merely states, without elaboration, that plaintiff is not credible because of the "lack of supporting treatment", "her activities even while receiving disability benefits in the past" and because "no treating physician has opined that [she] is disabled." (R. 22). The ALJ failed to explain how these statements are inconsistent with plaintiff's alleged limitations. We cannot affirm a decision if we are unable to determine whether the ALJ "investigated 'all avenues' that relate to [plaintiff's] complaints of pain because [his] decision offers no clue as to whether [he] examined that full range of medical evidence." *Zurawski*, 245 F.3d at 888. ALJ Mondi's decision, "in its present form, falls below the mark," thus we do not have a sufficient basis upon which to affirm his credibility determination. *Id*. That said, we are not suggesting that the credibility determination is erroneous, but only that it requires further elaboration.

### Dr. Langgut's Findings

Next, we address plaintiff's claim that the ALJ improperly relied on his own medical opinion and erroneously rejected the findings of Dr. Langgut. Dr. Langgut conducted a consultative mental examination of plaintiff on February 27, 2002. We outlined the pertinent findings from his evaluation *supra*. After reviewing those findings, the ALJ opined that "if adopted [they] would warrant a finding of disabled." (R. 21-22). The ALJ then proceeded to reject a majority of Dr. Langgut's findings, concluding that they were not consistent with the evidence in the record. Specifically, ALJ Mondi concluded that Dr. Langgut's findings were not persuasive because "either [plaintiff] failed to report or the examiner overlooked [Burney's] significant ongoing work after her '7-11' job ended in 1992, with earnings indicative of substantial gainful activity through

13

1998 and at least approaching that level in years 1999-2000," and they were "inconsistent with [plaintiff] never receiving treatment for a mental impairment." (R. 22). The ALJ further concluded that "with treatment, [Burney's] limitations may be further reduced." *Id.*

The ALJ's findings must be based on testimony and medical evidence in the record. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record. *Clifford*, 227 F.3d at 871. ALJ Mondi acknowledged that Dr. Langgut diagnosed plaintiff as having bipolar disorder with functional limitations that if adopted would warrant a finding of disabled. However, he disregarded those medical findings concluding that "the record is persuasive that claimant has only slight limitations. . . ." (R. 22). The ALJ failed to cite any specific evidence in the record to support this statement. He merely provided the record cites "B1-B10F", which correspond to the exhibit numbers given to plaintiff's medical records. He did not actually cite to a specific document or set of documents that supported his conclusion. The ALJ did not cite a conflicting medical report or examination finding, just the record as a whole. Such a blanket citation, without elaboration, is not sufficient to build an accurate and logical bridge from the evidence to the ALJ's conclusion.

The ALJ also discredited Dr. Langgut findings on the grounds that he did not mention Burney's significant ongoing work since 1992, apparently concluding that Dr. Langgut's findings were inconsistent with her work record after 1992. Unfortunately, the ALJ did not cite any medical evidence to support such a conclusion and did not seek the testimony of a medical expert to determine whether plaintiff's work history after

14

1992 was truly inconsistent with a diagnosis of bipolar disorder and schizoid personality features. It is not permissible for an ALJ to deny a claimant benefits solely because the ALJ believes that the claimant's ability to do certain things precludes him from being disabled. *Rohan*, 98 F.3d at 970. Moreover, ALJs "must not succumb to the temptation to play doctor and make their own independent medical findings." *Id*. Often, "common sense can mislead" and "lay intuitions about medical phenomena are wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990). This is especially true in cases involving mental illness. *Wilder v Chater*, 64 F.3d 335, 337 (7th Cir 1995). In those cases, health professionals, particularly psychiatrists, are the experts, not lawyers or judges. *Id*.

The foregoing analysis also applies to the ALJ's statement that plaintiff's failure to seek or receive mental treatment can serve as a basis to discredit the findings of Dr. Langgut. This is not a situation where Burney has inexcusably refused medical treatment that would eliminate her disability entirely. 20 C.F.R. § 416.930(b); *DeFranceso v. Bowen*, 867 F.2d 1040, 1043 (7th Cir. 1989) (in such a situation the claimant will not be found totally disabled). Instead, in the instant case, there is no evidence in the record to support the ALJ's statement that Burney's limitations may be reduced with treatment, much less eliminated entirely.

As stated above, the ALJ is required to build an accurate and logical bridge from the evidence to his conclusion. *Dixon*, 270 F.3d at 1177. The ALJ failed to elaborate on his reasoning for discrediting Dr. Langgut's findings. He neither supports his decision by relying on other medical findings in the record, nor did he cite inconsistent medical evidence that would allow him to discount Dr. Langgut's findings. In the absence of sufficient explanation or contradicting medical evidence, this Court must

15

assume that ALJ Mondi impermissibly substituted his own judgment for that of the physicians. *See Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1991). Such actions require a remand.

### New Evidence

Finally, Burney seeks a remand pursuant to sentence six of 42 U.S.C. §405(g) to allow the ALJ to consider "new evidence" plaintiff believes merits a finding that she is disabled under the Act. Specifically, plaintiff seeks a remand to allow the ALJ to consider Dr. Wright's July 26, 2002 medical certification in which he states that "Ms. Irene Burney remains unable to work due to headaches, problems with concentration, imbalance and falls along with visual disturbances. She has difficulty with verbal communication that makes all forms of work not feasible." (R. 534).

In order to obtain a sentence six remand to allow the Commissioner to consider "new evidence," plaintiff must show that the evidence is in fact new, is material to her claim, and there is good cause for her failure to incorporate the evidence into the record at the prior proceeding. *See* 42 U.S.C. 405(g); *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993). Evidence is "new" if it was either not in existence or not available to the claimant at the prior proceeding. *Jens v. Barnhart*, 347 F.3d 209, 214 (7th Cir. 2003). Evidence is "material" if there is a "reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." *Id.* (quoting *Perkins v. Chatter*, 107 F.3d 1290, 1296 (7th Cir. 1997)).

Dr. Wright's July 26, 2002 medical certification fails to meet at least two of the three §405(g) "new evidence" requirements and thus cannot and does not merit a sentence six remand. First, the medical certification is not "new" evidence under

16

§405(g) because it was available to Burney at the prior proceeding. True, the certification was not actually written until approximately six weeks after the ALJ issued his decision on June 14, 2002. However, the certification was based on information that was part of the administrative record available to the ALJ prior to his decision. Therefore, it cannot be considered new evidence. *See Sample*, 999 F.2d at 1144 (a letter actually written after the ALJ's decision, but based on evidence in the administrative record available to the ALJ at the time of his decision, did not meet the newness requirement in §405(g)); *See also Jens*, 347 F.3d at 213 (a report written after the ALJ's decision, but summarizing information that had long been in existence, does not meet the newness requirement of §405(g)).

Further, Burney did not show good cause for her failure to incorporate the medical certification into the record in the prior proceeding. As stated above, Dr. Wright's medical certification was based on his treatment of plaintiff from 1993 through 2001. There is no reason plaintiff could not have obtained this medical certification prior to the ALJ's hearing or the issuance of his decision in 2002. The certification was not based on new medical ailments or conditions that arose or worsened after the ALJ's hearing. Plaintiff has failed to show good cause for her failure to request the medical certification from Dr. Wright in 2001, or anytime prior to issuance of the ALJ's decision. *See Sample*, 999 F.2d at 1444 (finding no showing of good cause under circumstances similar to the instant case). Because plaintiff has failed to establish that Dr. Wright's medical certification qualifies as new evidence under §405(g), her request for a sentence six remand to allow the ALJ to consider new evidence is denied.

## CONCLUSION

For the reasons stated above, the Court remands this case to the ALJ for further proceedings consistent with the opinion. On remand, the ALJ should: (1) better articulate his step 2 findings, (2) consider the effect, if any, of Dr. Wright's treatment notes on his determination regarding plaintiff's physical impairments, and (3) elaborate on the basis for his credibility determinations and his decision to disregard the findings of Dr. Langgut. Accordingly, we grant plaintiff's motion for summary judgment and deny defendant's motion for summary judgment. It is so ordered.

ENTER:

*[signature]*

**MICHAEL T. MASON**

**United States Magistrate Judge**

Dated: August 9, 2004